UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

---

```
---------------------------------------------------------- x
In re:                                          :
                                                :     Chapter 13
RAYSHION SASHINGTON,                            :
                                                :     Case No.: 19-31767
                                    Debtor.      :
                                                :
---------------------------------------------------------- x
```

## MOTION FOR RELIEF FROM AUTOMATIC STAY OR FOR ADEQUATE PROTECTION

**NOW COMES** Truist Bank ("Truist") by and through counsel and moves this court for an Order granting it relief from the automatic stay pursuant to 11 U.S.C. § 362(d) or, alternatively, for adequate protection pursuant to 11 U.S.C. § 361. In support of this motion (the "Motion"), Truist shows unto the court as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief requested herein is 11 U.S.C. § 362(d) and (g) and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure.

### INTRODUCTION

2.      On December 31, 2019 (the "Petition Date"), Rayshion Sashington ("the Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina.

3.      Prior to its dissolution on September 10, 2020, Debtor was the principal of Sash Enterprises, Inc., a corporation formed under the laws of the State of North Carolina with a principal office at 2307 S Cannon Blvd, Kannapolis, NC 28083 ("Sash Enterprises").

4.      Sash Enterprises made and entered a commercial promissory note in favor of Truist, dated September 27, 2019 payable to Truist in the principal amount of $200,000.00 (the "Note"). A true and accurate copy of the Note is attached as <u>Exhibit A</u> and incorporated in herein by reference.

5.      In conjunction with the note, on or about September 27, 2019, Sash Enterprises executed a Deed of Trust (the "Deed of Trust"), pursuant to which the Sash Enterprises granted Truist a first priority security interest in the real property located at 2305 S. Cannon Blvd, Kannapolis, NC 28083 and 2307 S. Cannon Blvd., Kannapolis, NC 238083. (the "Property").  A true and accurate copy of the Deed of Trust is attached as <u>Exhibit B</u> and incorporated herein by reference.

6.      Debtor executed an Unconditional Guaranty whereby he unconditionally guaranteed the repayment of the note. A true and accurate copy of the Unconditional Guaranty is attached as <u>Exhibit C</u> and incorporated herein by reference.

7.      Sash Enterprises defaulted under the payment terms and conditions of the Note. As of December 4, 2024, the outstanding balance due and owing to Truist under the Note is $169,009.37.   On December 4, 2024, Truist sent a demand letter to Sash Enterprises to that effect. The demand letter includes a breakdown of the balance due and owing under the Note (principal and interest) and is attached as <u>Exhibit D</u> and incorporated herein by reference.

8.      Debtor's Schedule D, filed along with his chapter 13 petition on December 31, 2024, reports real property located at 2305 S. Canon Blvd. and 2307 S. Canon Blvd as "Real

WBD (US) 4931-6166-6567

Estate Owned by Debtor's business (Sash Enterprises) . . ." with SunTrust Bank listed as creditor.

9.      Truist is successor-in-interest by merger to SunTrust Bank.

10.     On January 1, 2020, one day after Debtor filed for bankruptcy under chapter 13 of the Bankruptcy Code, Sash Enterprises transferred its interest in the Property to the Debtor, personally, by quit claim deed.  A true and correct copy of the deed is attached as <u>Exhibit E</u> and incorporated herein by reference.

11.     As a result of the transfer of deed, the Property is property of the bankruptcy estate.

12.     The Note matured on September 27, 2024.  The entire balance of the Note is due and payable in full.

13.     To date and since the Note matured, Truist has not received payment of the balance of the Note.

<b><u>BASIS FOR RELIEF</u></b>

14.     Upon the filing of a bankruptcy petition, the automatic stay imposed by 11 U.S.C. § 362(a) operates to stay "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a).  Section 362(d) allows a court to grant a party relief from the automatic stay for cause, which includes the lack of adequate protection of an interest in property of a party in interest. 11 U.S.C. § 362(d)(1). Because the Code does not define what constitutes "cause," the Second Circuit has held that the "facts of each request [for relief from automatic stay] will determine whether relief is appropriate under the circumstances." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2nd Cir. 1999)

- 3 -

(citing *Sonnax Indus. C. Tri Component Prod. Corp. (In re Sonnax)*, 907 F.2d 1280, 1286 (quoting H.R.Rep. No. 95–595, at 343–44 (1977); 2 *Colliers on Bankruptcy* ¶ 362.07[1], at 362-68 to 69 (15th ed. 1992)).

15.     The lack of adequate protection is the most common basis for finding cause to grant relief.  3 *Colliers on Bankruptcy* ¶ 362.07[3] (16th ed. Rev. 2019)).  Like with "cause," the term "adequate protection" is not defined in the Code.  Instead, Section 361 provides examples of what may adequately protect a party's interest, such as periodic payments, granting an additional or replacement lien to account for the decrease in the value of such entity's interest in the property, or such other relief that will result in such entity realizing the indubitable equivalent of such interest. 11 U.S.C. § 361.

16.     Truist is entitled to immediate repayment of the Note. Sash Enterprises nor Debtor have paid the Note balance in full since it matured.

17.     Based on the foregoing, and as a result of the Sash Enterprise's default under the Note, Truist is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause.  Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(1) for the reasons set out above, including the Debtor's failure to pay the Note as matured.

WHEREFORE, Truist prays for the court to grant the following relief:

1.     To enter an Order modifying the automatic stay imposed by 11 U.S.C. § 362 to allow Truist to institute and complete foreclosure of the Property under the terms of its loan documents and in accordance with applicable law;

2.     In the alternative, and in the event the court determines that the automatic stay should remain in full force and effect, to enter an Order for the adequate protection of Truist's

WBD (US) 4931-6166-6567

interest in the Property and to provide that the rights of Truist, pursuant to 11 U.S.C. § 507(b), be fully protected;

3.      To award Truist reimbursement of its attorney's fees and costs pursuant to the terms of the Note; and

4.      To grant such other and further relief as the court deems just and appropriate.

This the 9th day of January 2025.          WOMBLE BOND DICKISON (US) LLP

By:    /s/ James S. Livermon, III
James S. Livermon, III
NC State Bar Number 26492
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2148
Charlie.livermon@wbd-us.com

*Attorneys for Truist Bank*

WBD (US) 4931-6166-6567

# EXHIBIT A

 **SunTrust**

**Commercial Note**

Date: September 27, 2019

| | |
|---|---|
| Borrower: | Sash Enterprises, INC |
| Borrower Address: | 2307 S. Cannon Blvd<br>Kannapolis, NC 28083 |
| Loan Amount: | Two Hundred Thousand Dollars and no cents ($200,000.00) |
| Account No.: | ████443   Note No.: 18                    Officer: Marcus Smith, 33621 |

For value received, the borrower(s) named above (whether one or more, "Borrower"), jointly and severally promise to pay to the order of SunTrust Bank, a Georgia banking corporation ("SunTrust") without offset in U.S. Dollars and in immediately available funds, the Loan Amount shown above, or the total of all amounts advanced under this commercial note and any modifications, renewals, extensions or replacements thereof (this "Note") if less than the full Loan Amount is advanced, plus interest and any other amounts due, upon the terms specified below. As used in this Note, the term "SunTrust Party" shall mean and include SunTrust and any current and future subsidiaries and affiliates of SunTrust and each of their respective successors and assigns.

**Loan Type:**      Term Loan (This Note contains a final balloon payment).

**Repayment Terms:**      Fixed payment schedule consisting of 59 consecutive monthly installments of principal and interest of $1,300.01 each, payable on the 27th day of each month, beginning October 27, 2019, and a final payment equal to the unpaid principal balance plus accrued and unpaid interest and any other amounts owed due and payable on September 27, 2024.

**Interest**

Interest will accrue on an actual/360 basis (on the actual number of days elapsed over a year of 360 days). Interest shall accrue from the date of disbursement on the unpaid balance and shall continue to accrue until this Note is paid in full.

Subject to the above, interest per annum payable on this Note (the "Rate") shall be 4.75% fixed for the term of the loan.

**Collateral**

Unless otherwise agreed in writing, any collateral pledged to SunTrust to secure any of the existing or future liabilities of the Borrower to SunTrust shall also secure this Note. To the extent permitted by law, the Borrower grants to SunTrust a security interest in and a lien upon all deposits and investments maintained by the Borrower with a SunTrust Party.

Collateral for this Note includes, but is not limited to, the following:

Deed of Trust dated this date by Sash Enterprises, INC covering real estate known as 2305 S. Cannon Blvd., Kannapolis, NC 28083 and 2307 S. Cannon Blvd, Kannapolis, NC 28083 and as more particularly described therein.

All of the foregoing security is referred to collectively as the "Collateral". Unless otherwise agreed in writing, the Collateral is security for the payment of this Note and any other liability (including overdrafts and future advances) of Borrower to any SunTrust Party, however evidenced, now existing or hereafter incurred, matured or unmatured, direct or indirect, absolute or contingent, several, joint, or joint and several, including any extensions, modifications or renewals. The proceeds of any Collateral may be applied against the liabilities of Borrower to SunTrust in such order as SunTrust deems proper.

**Loan Purpose and Updated Financial Information Required**

Borrower represents and warrants that the loan evidenced by this Note is being made solely for the purpose of acquiring or carrying on a business, professional or commercial activity or acquiring real or personal property as an investment (other than a personal investment) or for carrying on an investment activity (other than a personal investment activity). Borrower represents, warrants and covenants that no part of the proceeds of the loan evidenced by this Note will be used directly or indirectly (a) to fund or finance any operations, investments or activities in or make any payments to a (1) Person that is, or is owned or controlled by, Persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (2) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (b) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption. Borrower further represents, warrants and covenants that while the loan evidenced by this Note remains outstanding, each Obligor, each subsidiary or affiliate of each Obligor, and their respective directors, officers, employees, or agents will not (a) be or become a Sanctioned Person, (b) allow any of their assets to be located in a Sanctioned Country, or (c) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country. As used herein, "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority. As used in this Note, the term "Person" shall mean any individual, partnership, firm, corporation, association, joint venture, limited liability company, trust or other entity, or any governmental authority or governmental agency. As used in this Note the term "Obligor" shall

individually and collectively refer to Borrower and any other Person that is primarily or secondarily liable for the payment of the loan evidenced by this Note and any Person that has conveyed or may hereafter convey any security interest or lien to SunTrust in any real or personal property to secure payment of this Note. Borrower agrees to provide to SunTrust updated financial information, including, but not limited to, tax returns, current financial statements in form satisfactory to SunTrust, as well as additional information, reports or schedules (financial or otherwise), all as SunTrust may from time to time request.

**Representations and Warranties**

This Note has been duly executed and delivered by Borrower, constitutes Borrower's valid and legally binding obligations and is enforceable in accordance with its terms against Borrower. The execution, delivery and performance of this Note and the consummation of the transaction contemplated will not, with or without the giving of notice or the lapse of time, (a) violate any law applicable to Borrower, (b) violate any judgment, writ, injunction or order of any court or governmental body or officer applicable to Borrower, (c) violate or result in the breach of any material agreement to which Borrower is a party nor (d) as applicable, violate any charter, bylaws, operating agreement, partnership agreement or any other agreement by which Borrower is bound. No consent, approval, license, permit or other authorization of any third party or any governmental body or officer is required for the valid and lawful execution and delivery of this Note. If Borrower is required to deliver to SunTrust a Beneficial Ownership Certification pursuant to the requirements of the Beneficial Ownership Rule (31 C.F.R. § 1010.230), Borrower represents and warrants that the information included in such certification is true and correct in all respects. As of the date of this Note, Borrower represents that neither Borrower nor the Collateral is subject to any material claim, dispute or litigation that has not been previously disclosed to SunTrust in writing.

**Default, Acceleration and Setoff**

An "event of default" shall occur hereunder upon the occurrence of any one or more of the following events or conditions:

(a) the failure by any Obligor to pay, whether by acceleration or otherwise, (i) any interest or fees owed under this Note when due and such failure shall continue unremedied for a period of five (5) days thereafter or (ii) any principal amount owed under this Note when due;

(b) (i) the occurrence of any event of default under any other agreement executed in connection with this Note or the failure of any Obligor to perform any covenant, promise or obligation contained in this Note, or such other agreement, provided, however that if such failure relates to a covenant other than a negative covenant or a financial covenant under this Note or any agreement executed in connection with this Note, the Obligor shall have thirty (30) days to cure such failure after the earlier of the date (A) the Obligor or any officer or representative of the Obligor becomes aware of such failure or (B) notice of such failure is given to such Obligor by SunTrust or (ii) the occurrence of any event of default under, or the failure of any Obligor to perform any covenant, promise or obligation contained in, any other agreement to which any Obligor and any Suntrust Party are parties;

(c) any representation or warranty of any Obligor contained in this Note or any other agreement with any SunTrust Party shall prove to be incorrect in any material respect (other than any representation or warranty that is expressly qualified by a material adverse effect or other materiality, in which case such representation or warranty shall prove to be incorrect in any respect);

(d) the failure of any Obligor to pay when due any principal, interest or other amount due under any indebtedness of such Obligor (after any applicable grace period specified in connection with such indebtedness) to any creditor other than SunTrust or any event shall occur or condition shall exist under any agreement or instrument relating to such indebtedness, if the effect of such event or condition is to accelerate, or permit the acceleration, of such indebtedness;

(e) the dissolution, liquidation, merger, consolidation, termination or suspension of usual business of any Obligor;

(f) the death or declaration of incompetency of any Obligor that is a natural person unless within thirty (30) days after the death or declaration of incompetency of such Obligor, a substitute Obligor acceptable to SunTrust shall have executed documentation in form and substance acceptable to SunTrust;

(g) any person or entity, or any group of related persons or entities, shall, without SunTrust's prior written consent, have or obtain legal or beneficial ownership of a majority of the outstanding voting securities or rights of any Obligor that is not a natural person, other than any person or entity, or any group of related persons or entities that has such majority ownership as of the date of this Note; or any change in the ownership or control information in Borrower's Beneficial Ownership Certification shall have occurred since the date of this Note;

(h) any Obligor shall (i) commence a voluntary case or other proceeding or file any petition seeking liquidation, reorganization or other relief under any federal, state or foreign bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a custodian, trustee, receiver, liquidator or other similar official for such Obligor or any substantial part of such Obligor's property, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (i) of this section (h), (iii) apply for or consent to the appointment of a custodian, trustee, receiver, liquidator or other similar official for such Obligor or for a substantial part of such Obligor's assets, (iv) file an answer admitting the material allegations of a petition filed against such Obligor in any such proceeding, (v) make a general assignment for the benefit of creditors, or (vi) take any action for the purpose of effecting any of the foregoing;

(i) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization or other relief in respect of any Obligor or such Obligor's debts, or any substantial part of such Obligor's assets, under any federal, state or foreign bankruptcy, insolvency or other similar law now or hereafter in effect or (ii) the appointment of a custodian, trustee, receiver, liquidator or other similar official for any Obligor or for a substantial part of such Obligor's assets, and in any such case, such proceeding or petition shall remain undismissed for a period of sixty (60) days or an order or decree approving or ordering any of the foregoing shall be entered;

(j) the entry of a judgment, award or order against any Obligor which remains unstayed, unsatisfied or unbonded for thirty (30) days following the issuance of such judgment, award or order, or the issuance or service of any attachment, levy or garnishment against any Obligor or the property of any Obligor or the repossession or seizure of property of any Obligor;

(k)   the sale or transfer by any Obligor of all or substantially all of such Obligor's assets other than in the ordinary course of business;

(l)   any provision of any guaranty, security agreement, or other collateral documentation shall, due to any act or failure to act by any Obligor, cease to be valid and binding on, or enforceable against, any Obligor, or any Obligor shall so state in writing, or any Obligor shall terminate or seek to terminate such Obligor's obligations under such agreements; or

(m)   a material adverse change in the financial condition, operations, business, or prospects of any Obligor has occurred since the date of this Note.

SunTrust shall not be obligated to fund this Note or make any advance under this Note if at the time such funding or advance is requested there exists (i) an event of default or (ii) an event or condition which with the passage of time or giving of notice or both would result in an event of default. Upon the occurrence of an event of default, SunTrust shall, at its option, have the remedies provided herein and by any other agreement between SunTrust and any Obligor or under applicable law, including without limitation, declaring the entire outstanding principal balance, together with all interest thereon and any other amounts due under this Note, to be due and payable immediately without presentment, demand, protest, or notice of any kind, except notice required by law. Upon the occurrence of an event of default under paragraph (h) or (i) above, the entire outstanding principal balance, together with all interest thereon and any other amounts due under this Note, shall automatically become due and payable without presentment, demand, protest, or notice of any kind except notice required by law . Upon the occurrence of an event of default, as of the date of such event of default, SunTrust, at its option, may charge interest on the unpaid balance of this Note at the lesser of (a) the Rate plus 4.00% per annum or (b) the maximum rate allowed by law (the "Default Rate") until paid in full. To the extent permitted by law, upon the occurrence of an event of default, SunTrust will have the right, in addition to all other remedies provided herein, to set off the amount due under this Note or due under any other obligation of Borrower to SunTrust against any and all accounts, whether checking or savings or otherwise, credits, money, stocks, bonds or other security or property of any nature whatsoever on deposit with, held by, owed by, or in the possession of any SunTrust Party to the credit of or for the account of Borrower, without notice or consent of Borrower. In addition to the foregoing, SunTrust shall not be obligated to fund this Note or make any advance under this Note in the event of material deterioration or impairment of the Collateral or any material decline or depreciation in the value of the Collateral which causes the Collateral to become unsatisfactory as to character or value. The remedies provided in this Note and any other agreement between SunTrust and any Obligor and by applicable law are cumulative and not exclusive of any other remedies provided by applicable law.

**Late Charges and Other Authorized Fees and Charges**

If any portion of a payment is at least 15 days past due, Borrower agrees to pay a late charge of 4.00% of the amount which is past due.

Unless prohibited by applicable law, Borrower agrees to pay the fee established by SunTrust from time to time for returned checks if a payment is made on this Note with a check and the check is dishonored for any reason after the second presentment. In addition to any other amounts owed under the terms of this Note, Borrower agrees to pay those fees and charges disclosed in the attached Disbursements and Charges Summary or other form of closing statement which is incorporated in this Note by reference and, as permitted by applicable law, Borrower agrees to pay the following: (a) all expenses, including, without limitation, any and all costs incurred by SunTrust related to enforcement, all court costs and out-of-pocket collection expenses and reasonable attorneys' fees actually incurred, whether suit be brought or not, incurred in collecting this Note; (b) all costs incurred in evaluating, preserving or disposing of any Collateral granted as security for the payment of this Note, including the cost of any audits, appraisals, appraisal updates, reappraisals or environmental inspections which SunTrust from time to time in its sole discretion may deem necessary; (c) any premiums for property insurance purchased on behalf of Borrower or on behalf of the owner(s) of any Collateral pursuant to any security instrument relating to any Collateral; and (d) any expenses or costs (including reasonable attorneys' fees) incurred in defending any claim arising out of the execution of this Note or the obligations which it evidences. Borrower agrees to pay such amounts on demand or, at SunTrust's option, such amounts may be added to the unpaid balance of the Note and shall accrue interest at the stated Rate. Upon the occurrence of an event of default, or after demand and failure to pay if this Note is payable on demand, interest shall accrue at the Default Rate.

**Prepayment Provision**

Borrower may make a prepayment in any amount at any time without penalty.

**Payments**

Borrower is directed to make payments at the address indicated on the billing statement provided by SunTrust, or at such place as SunTrust may otherwise indicate in writing. Payments may also be made at those SunTrust branches which accept loan payments, however, Borrower acknowledges that Borrower is not directed to make payments at such branches and that SunTrust's acceptance of payments at such branches is an accommodation to Borrower which may be revoked at any time in SunTrust's sole and absolute discretion. All amounts received by SunTrust shall be applied to expenses, late fees and interest before principal or in any other order as determined by SunTrust, in its sole discretion, as permitted by law. Payments will be credited as of the date stamped upon receipt, or as of the standard payment processing date for similar payments if a payment is not stamped. Payments received on Saturday will be credited on SunTrust's next business day. If any payment date falls on a Saturday or Sunday or a legal bank holiday, payment will be due on the next business day. SunTrust's business days are Monday through Friday, not including legal bank holidays.

**Waivers**

Borrower and each other Obligor waive presentment, demand, protest, notice of protest and notice of dishonor and waive all exemptions, whether homestead or otherwise, as to the obligations evidenced by this Note and waive any discharge or defenses based on suretyship or impairment of Collateral or of recourse. Borrower waives any rights to require SunTrust to proceed against any other Obligor or any Collateral before proceeding against Borrower. Borrower further agrees that without notice to any Obligor and without affecting any Obligor's liability, SunTrust, at any time or times, may grant extensions of the time for payment or other indulgences to any Obligor or permit the renewal or modification of this Note, or permit the substitution, exchange or release of any Collateral for this Note and may add or release any Obligor whether primarily or secondarily liable. Borrower further agrees that SunTrust may apply all monies

made available to it from any part of the proceeds of the disposition of any Collateral or by exercise of the right of setoff either to the obligations under this Note or to any other obligations of any Obligor to SunTrust, as SunTrust may elect from time to time.

**Waiver of Damages other than Direct or Actual**

**TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND SUNTRUST HEREBY IRREVOCABLY WAIVE (AND IRREVOCABLY AGREE NOT TO ASSERT) ANY CLAIM WHATSOEVER FOR SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES OR LOST PROFITS (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) AGAINST EACH OTHER (OR AGAINST EACH OTHER'S RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS OR AGENTS) AT ANY TIME ARISING UNDER OR RELATING TO THIS NOTE, ANY RELATED DOCUMENT, OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN.**

**Patriot Act Notice**

SunTrust hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act Title III of Pub. L. 107-56 (signed into law October 26, 2001), SunTrust may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow SunTrust to identify Borrower in accordance with the Act.  Further, SunTrust hereby notifies Borrower that, pursuant to the requirements of the Beneficial Ownership Rule (31 C.F.R. § 1010.230), SunTrust may be required to obtain, verify and record information contained in a Beneficial Ownership Certification executed by Borrower, which will identify the key individuals who have beneficial ownership or control of Borrower.

**Hold Harmless and Indemnification**

Borrower hereby indemnifies and agrees to hold each SunTrust Party and its officers, directors, employees, agents and affiliates (each an "Indemnitee") harmless from and against all claims, damages, liabilities, costs (including reasonable attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (collectively, "Claims") in any matter relating to or arising out of this Note or any document or agreement executed in connection with this Note, or any act, event or transaction related thereto or to the Collateral.  Borrower shall promptly provide SunTrust with written notice of any such Claim, provided, however, that this indemnity shall not apply to any Claims arising solely from the gross negligence or willful misconduct of such Indemnitee as determined by a court of competent jurisdiction in a final non-appealable judgment or order.  Upon request of SunTrust, Borrower shall defend each applicable Indemnitee from such Claims, and pay the reasonable attorneys' fees, legal expenses and other costs actually incurred in connection therewith, or in the alternative, at SunTrust's option, each applicable Indemnitee shall be entitled to employ its own legal counsel to defend such Claims at Borrower's sole expense.

**Miscellaneous**

Any provision of this Note or any agreement executed in connection with this Note which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Note or any such agreement. No amendment, modification, termination or waiver of any provision of this Note or any agreement executed in connection with this Note, nor consent to any departure by Borrower from any term of this Note or any agreement executed in connection with this Note, shall in any event be effective unless it is in writing and signed by an authorized officer of SunTrust, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  If the Rate is tied to an external index and the index becomes unavailable during the term of this loan, SunTrust may, in its sole and absolute discretion, designate a substitute index with notice to Borrower. No failure or delay on the part of SunTrust to exercise any right, power or remedy under this Note or any agreement executed in connection with this Note shall be construed as a waiver of the right to exercise the same or any other right at any time.  The captions of the paragraphs of this Note are for convenience only and shall not be deemed to constitute a part hereof or used in construing the intent of the parties.  All representations, warranties, covenants and agreements contained herein or made in writing by Borrower in connection herewith shall survive the execution and delivery of this Note and any other agreement, document or writing relating to or arising out of any of the foregoing.  All notices or communications given to Borrower pursuant to the terms of this Note shall be in writing and may be given to Borrower at Borrower's address as stated below or at the top of this Note unless Borrower notifies SunTrust in writing of a different address.  Unless otherwise specifically provided herein to the contrary, such written notices and communications shall be delivered by hand or overnight courier service, or mailed by first class mail, postage prepaid, addressed to Borrower at the address referred to herein. Any written notice delivered by hand or by overnight courier service shall be deemed given or received upon receipt. Any written notice delivered by U.S. Mail shall be deemed given or received on the third (3rd) business day after being deposited in the U.S. Mail. Notwithstanding any provision of this Note or any agreement executed in connection with this Note to the contrary, Borrower and SunTrust intend that no provision of this Note or any agreement executed in connection with this Note be interpreted, construed, applied, or enforced in a way that will permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected by the laws of the jurisdiction indicated below, or federal law if federal law preempts the law of such jurisdiction with respect to this transaction (the "Maximum Permitted Rate").  If, however, any such provision is so interpreted, construed, applied, or enforced, Borrower and SunTrust intend (a) that such provision automatically shall be deemed revised so as to require payment only of interest at the Maximum Permitted Rate; and (b) if interest payments in excess of the Maximum Permitted Rate have been received, that the amount of such excess shall be deemed credited retroactively in reduction of the then-outstanding principal amount of this obligation, together with interest at the Maximum Permitted Rate. In connection with all calculations to determine the Maximum Permitted Rate, Borrower and SunTrust intend (a) that all charges be excluded to the extent they are properly excludable under the usury laws of such jurisdiction or the United States, as they from time to time are determined to apply to this obligation; and (b) that all charges that may be spread in the manner provided by statute of the jurisdiction indicated or any similar law, be so spread.

**Successors and Assigns and Choice of Law**

This Note shall apply to and bind Borrower's heirs, personal representatives, successors and permitted assigns and shall inure to the benefit of SunTrust, its successors and assigns. Notwithstanding the foregoing, Borrower shall not assign Borrower's rights or obligations under this Note without SunTrust's prior written consent. Borrower agrees that certain material events and occurrences relating to this Note bear a reasonable relationship to the laws of North Carolina. This Note shall be governed by the laws of North

Carolina and, unless applicable law provides otherwise, in the event of any legal proceeding arising out of or related to this Note, Borrower consents to the jurisdiction and venue of any court located in North Carolina. Nothing in this Note or in any other document or agreement entered into in connection with this Note shall affect any right that SunTrust may have to bring any action or proceeding arising out of or related to this Note against Borrower or its properties in the courts of any jurisdiction.

**Documentary and Intangible Taxes**

In the event that any intangible tax or documentary stamp tax is due from SunTrust to any state or other governmental agency or authority because of the execution or holding of this Note, Borrower shall, upon demand, reimburse SunTrust for any such tax paid.

**Transfer of Loan**

SunTrust may, at any time, sell, transfer or assign the Note, the related security instrument and any related loan documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). SunTrust may forward to each purchaser, transferee, assignee, servicer, participant, or investor in such Securities or any Rating Agency (as hereinafter defined) rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which SunTrust now has or may hereafter acquire relating to Borrower, any loan to Borrower, any guarantor or the property, whether furnished by Borrower, any guarantor or otherwise, as SunTrust determines necessary or desirable. The term "Rating Agency" shall mean each statistical rating agency that has assigned a rating to the Securities.

**Counterparts**

This Note may be executed in any number of counterparts, each of which shall be an original, but all of which shall together constitute one and the same agreement. This Note shall be effective upon Borrower's execution of this Note and SunTrust's receipt of duly executed counterparts from each of the parties hereto. Upon approval by SunTrust in its sole discretion, signatures to this Note transmitted in a commonly accepted electronic format that reproduces an image of the actual executed signature page shall have the same legal effect, validity, and enforceability as a manually executed counterpart of the document to the extent and as provided for in the Federal Electronic Signatures in Global and National Commerce Act and the applicable state law based on the Uniform Electronic Transactions Act. Further, Borrower agrees to deliver a manually executed counterpart of this Note to SunTrust no later than ten (10) days following the date of this Note.

By signing below under seal, Borrower agrees to the terms of this Note and the disbursement of proceeds as described in the Disbursements and Charges Summary or other closing statement provided in connection with this transaction.

Sash Enterprises, INC

By: _____
Rayshion Sashington, CEO

Borrower's Billing Address:

2307 S. Cannon Blvd
Kannapolis, NC 28083

# EXHIBIT B

13758 0001

FILED ELECTRONICALLY
CABARRUS COUNTY NC
M. WAYNE NIXON
=========================
FILED         Oct 01, 2019
AT            03:55:00 PM
BOOK             13758
START PAGE        0001
END PAGE          0010
INSTRUMENT #     26837
EXCISE TAX       $0.00



**Deed of Trust**
**North Carolina (All Obligations)**

This instrument prepared by, and after recordation to be returned to:
SunTrust Bank, C/O Doc Prep Dept.
245 Peachtree Center Avenue
17th Floor
Mail Code: GA-Atlanta-3707
Atlanta, GA  30303

Prepared by: Lutzel Broadway &
Assoc.; 3440 Toringdon Way, #308;
Charlotte, NC 28277

Address for purpose of notice to Trustee or SunTrust Bank:

C/O Doc Prep Dept.
245 Peachtree Center Avenue
17th Floor
Mail Code: GA-Atlanta-3707
Atlanta, GA 30303
**Reference Obligor Number:** 60962443

**Collateral Includes Fixtures**
**(This Document Serves as a Fixture Filing Under Section 9-502 of the North Carolina Uniform Commercial Code.)**

This Deed of Trust is made and entered into as of September 27, 2019, by and among Sash Enterprises, INC, (whether one or more, referred to as "Grantor"); in favor of Southland Associates, Inc., whose business address is 303 Peachtree Street NE, Suite 900, Atlanta GA 30308,  referred to as "Trustee"); for the benefit of SunTrust Bank, having an address of 245 Peachtree Center Avenue,  17th Floor,  Mail Code: GA-Atlanta-3707,  Atlanta,  GA  30303, its present and future affiliates and their successors and assigns ("SunTrust").

For and in consideration of the indebtedness herein recited and the trust herein created, Grantor grants, bargains, mortgages, assigns, sells and conveys unto Trustee, in trust, with power of sale and with general warranty of title, all of Grantor's real estate located in Cabarrus County, North Carolina, and more particularly described on attached **Exhibit A** which has the address of 2305 S. Cannon Blvd, Kannapolis, NC 28083  and 2307 S. Cannon Blvd, Kannapolis, NC

Copies: 0
Distribution: Original – Filed in Office/Register of Deeds
630491 (03/2018)

Page 1 of 10

Submitted electronically by "Lutzel Broadway & Associates PC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the Memorandum of Understanding with
the Office of the Register of Deeds of Cabarrus County. NCGS 47-14(a1)(5).

28083 together with all easements and appurtenances thereto, all of the rights of Grantor in and to the streets, alleys and rights-of-way appurtenant to and adjoining or adjacent to the land described above and together with any and all right, title and interest of Grantor in and to the improvements, which shall include any and all buildings and structures now or at any time erected in the future, constructed or situated upon said land or any part thereof, together with all fixtures, machinery, apparatus, fittings and equipment now or hereafter located in or upon the premises and now owned or which may hereafter be owned by Grantor, in and upon said land and premises, or which may hereafter be placed thereon, including, but not limited to, any equity which may be acquired by Grantor in such property as a result of making installment payments on account of the purchase thereof, including but not limited to elevators, escalators, boilers, engines, heating, ventilating and air conditioning systems, sprinkler or fire extinguishing systems, plumbing, partitions, wiring, storm doors and windows, wire screens, awnings, carpeting, drapes, window shades, switchboards, communications apparatus, floor tiling, linoleum, attached cabinets, wall panels and decorations attached to walls and ceilings, gas and electrical fixtures, chattels, attached appliances, and material used and to be used in the buildings and structures, but excluding any consumer goods not purchased with the Secured Indebtedness, as defined below, (all of which are deemed part and parcel of the real estate and appropriated to the use of the real estate and, whether affixed or not, shall for the purposes of this Deed of Trust be deemed conclusively to be real estate and conveyed hereby);

Notwithstanding any other provision in this Deed of Trust, to the extent any building located on the real property that is subject to this Deed of Trust contains personal property owned by the Grantor, SunTrust disclaims any security interest created under this Deed of Trust in such personal property if (i) such personal property is required to be insured pursuant to any existing or future Federal statute, regulation, policy or guideline related to flood insurance (collectively, the "Flood Laws") and (ii) such personal property is not covered by flood insurance to the extent required by the Flood Laws.

TO HAVE AND HOLD the foregoing rights, interests and properties, and all rights, estates, powers and privileges appurtenant thereto, together with the proceeds of all the foregoing (herein collectively called the "Property") unto the Trustee and the Trustee's successors and assigns, in trust, in fee simple forever, (a) to secure the prompt payment of the Secured Indebtedness, as defined below payable to SunTrust; and (b) to secure performance and observance of the terms and conditions of this Deed of Trust and the Note (as defined below).

SunTrust has extended credit to Sash Enterprises, INC (whether one or more, "Debtor," and which as used herein shall include any one or more and any combination of the parties constituting Debtor). The term "Secured Indebtedness" as used herein shall mean all obligations, liabilities and indebtedness of Debtor to SunTrust, whether now existing or hereinafter arising, direct or indirect, fixed or contingent, due or to become due, joint or several, for whatever purpose, irrespective of how such indebtedness is evidenced, including those owed by Debtor to others and acquired by SunTrust through purchase, assignment or otherwise, whether, as maker, endorser, guarantor, surety or otherwise, liquidated or unliquidated, matured or unmatured, whether or not secured by other collateral, and including, without limitation, (a) all obligations to perform or forbear from performing any acts, (b) all overdrafts on deposits or accounts maintained by Debtor with SunTrust, (c) all liabilities, obligations, agreements and undertakings of Debtor to SunTrust pursuant to any interest rate hedge agreement or other derivative transaction agreement or any foreign exchange contract or any application or other agreement requesting SunTrust to issue any letter of credit including, without limitation, the obligation of Debtor to reimburse SunTrust for all amounts funded by SunTrust pursuant to any such letter of credit, (d) all obligations and other liabilities of Debtor to SunTrust in respect of any of the following services (i) any treasury or other cash management services, including, without limitation, automated clearing house (ACH) origination and other funds transfer, depository (including, without limitation, cash vault and check deposit), zero balance account and sweep, returned items processing, controlled disbursement, positive pay, lockbox, account reconciliation and information reporting, payables outsourcing, payroll processing, and trade finance services, and (ii) card services, including, without limitation, credit card (including, without limitation, purchasing card and commercial card), prepaid card (including, without limitation, payroll, stored value and gift cards), merchant services processing, and debit card services; provided, that the aggregate outstanding principal amount of all Secured Indebtedness secured by this Deed of Trust shall not at any one time exceed the maximum aggregate amount of principal stated below, plus interest thereon (at the rate or rates set forth in the Notes or Agreements or other evidences of such indebtedness), fees due with respect to any such indebtedness, and, to the extent permitted by applicable law, all costs of collection with respect thereto, including without limitation, any costs and expenses incurred by Trustee or SunTrust in connection with the enforcement of this Deed of Trust or as otherwise provided herein.

As used herein the term "Note" shall mean each promissory note executed and delivered by Debtor to SunTrust, whether joint or several or joint and several, to repay the Secured Indebtedness or any part thereof, and any modifications, extensions or renewals thereof, including without limitation that certain promissory note, dated as of

September 27, 2019 in the principal amount of $200,000.00. The term "Agreement" shall mean each agreement between Debtor and SunTrust of whatever nature executed and delivered by Debtor to SunTrust in connection with any Note or the Secured Indebtedness or any part thereof.

**Future Advances.**  This Deed of Trust is given wholly or partly to secure future advances and/or future obligations that may be made or incurred under this Deed of Trust and future obligations (including future advances) made or which may be incurred by Debtor under any Note or any Agreement.  The maximum principal amount that may be secured by this Deed of Trust at any one time is $400,000.00.  The period within which future advances may be made and future obligations may be incurred, is thirty (30) years from the date of this Deed of Trust, or if this Deed of Trust is not dated, the date the Deed of Trust is registered, but in no event shall SunTrust be obligated to disburse any future loans, obligations or advances to the extent it is not obligated to do so in the Note or any Agreement.  Obligations secured hereby shall not be required to be evidenced by a "written instrument or notation" as described in Section 45-68(2) of the North Carolina General Statutes, it being the intent of the parties that the requirements of Section 45-68(2) for a "written instrument or notation" for each advance shall not be applicable to obligations incurred under any Note or any Agreement.

It is understood and agreed that the Secured Indebtedness will be advanced from time to time by SunTrust in accordance with the provisions of any Note or any Agreement, each of which is incorporated herein and made a part hereof by reference to the same extent as if fully set forth herein, and it is further understood and agreed that, from time to time, repayments on account of the Secured Indebtedness may be made and SunTrust may thereafter make additional advances including re-advances of sums previously repaid, to the extent provided in any Note or any Agreement, it being understood and agreed that each and every advance made at the present or hereafter to Debtor or on behalf of Debtor or Grantor shall be deemed to be an advance made on account of the Secured Indebtedness and secured hereby unless otherwise specifically provided in the Note, Agreement or other documents evidencing such advance.

Grantor represents, warrants, covenants and agrees as follows:

1.    **Payment and Performance**. Grantor shall perform its obligations under and comply with the provisions of this Deed of Trust and the Note.

2.    **Covenants; Warranty of Title; Payment of Taxes and Assessments; Prior Deeds of Trust or Mortgages.** Grantor (i) is lawfully seized of the Property in fee simple absolute or the leasehold estate if this Deed of Trust is on a leasehold, (ii) has the right to convey the same and (iii) conveys the Property free and clear of any liens, encumbrances, assessments or other charges except for easements, restrictions and rights of way of record specifically disclosed to SunTrust and approved by SunTrust in writing, and (iv) will warrant and defend title to the Property against all claims and demands whatsoever, subject only to the foregoing permitted encumbrances. At the time of recordation, this Deed of Trust shall be a **first** lien and encumbrance on the Property. Grantor will execute such further assurances as Trustee or SunTrust deems necessary or desirable in order to more fully vest title in Trustee. So long as any part of the Secured Indebtedness shall be unpaid, Grantor will protect the title and possession of the Property and will pay, when the same become due, all taxes and assessments now existing or hereafter levied or assessed upon the Property or the interest created by this Deed of Trust, or which by the laws of the jurisdiction where the Property is located may be levied or assessed against Trustee or its successors, or SunTrust, for or on account of the Secured Indebtedness upon this Deed of Trust or the interest in the Property thereby created, together with all sums now or hereafter owing on any senior deeds of trust or mortgages. Grantor will provide SunTrust with evidence of any such payments which from time to time may be required by SunTrust. Grantor will, at its expense, take such other action and execute such other instruments as may be necessary or desirable in the sole discretion of SunTrust to preserve and protect the lien and priority of this Deed of Trust and all other instruments evidencing or securing payment of the sums secured by this Deed of Trust.

3.    **Preservation and Maintenance of Property; Environmental Requirements**. No building or other improvement shall be substantially altered, removed or demolished, except for changes which enhance its value, nor shall any fixtures or attached appliances on, in or about said buildings or improvements be severed, removed, sold or mortgaged without the prior written consent of SunTrust (provided, however, that minor non-structural changes costing not more than $10,000 may be undertaken without such consent, and that replacement of such appliances or fixtures of equivalent value and function may be undertaken without such consent). Grantor will not commit or suffer any waste, nor permit or suffer any impairment or deterioration of the Property, or any part thereof. Grantor will at all times keep and maintain the Property and every part thereof in good condition, fit and proper for the respective purposes for which they were originally erected or installed. Grantor will comply with all statutes, orders, requirements or decrees relating to the Property, whether under

federal, state, county or municipal authority, and will observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning variances, special exceptions and nonconforming uses), privileges, franchises and concessions which are applicable to the Property or which have been granted to or contracted for by Grantor in connection with any existing or presently contemplated use of Property. Grantor will permit SunTrust or its agents to enter upon and inspect the Property at all reasonable times. SunTrust shall have the right, at Grantor's expense, to order such appraisals, reappraisals, appraisal updates or environmental inspections as SunTrust, in its sole discretion, may deem necessary from time to time.

Grantor represents and warrants that the Property never has been, and never will be so long as this Deed of Trust remains in effect, used for the generation, collection, manufacture, storage (except in compliance with all applicable federal, state and municipal laws, regulations and ordinances), treatment, disposal, release or threatened release of any hazardous substance, as those terms are defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C., Section 9601, et seq. ("CERCLA"), Superfund Amendments and Reauthorization Act ("SARA"), applicable state laws, or regulations adopted pursuant to either of the foregoing. Grantor agrees to comply with any federal, state or local law, statute, ordinance or regulation, court or administrative order or decree or private agreement regarding materials which require special handling in collection, storage, treatment or disposal because of their impact on the environment ("environmental requirements"). Grantor agrees to indemnify and hold SunTrust harmless against any and all claims and losses and expenses and costs resulting from a breach of this paragraph and Grantor will pay or reimburse SunTrust for all costs and expenses for expert opinions, inspections or investigations required or requested by SunTrust which, in SunTrust's sole discretion, are necessary to ensure compliance with this paragraph. This obligation to indemnify shall survive the payment of the Secured Indebtedness and the release of this Deed of Trust.

4.   **Insurance**. Grantor will keep the Property and the improvements thereon insured against loss by fire, casualty and other hazards (including flood damage, if the improvements are located in a special flood hazard area) as may from time to time be required by SunTrust for the benefit of SunTrust. If permitted by applicable law, Grantor will maintain such public liability and indemnity insurance as may from time to time be required by SunTrust. All such insurance shall be written in forms, amounts and by companies satisfactory to SunTrust and losses there under shall be payable to SunTrust pursuant to a standard noncontributing mortgagee's clause. Certificates or other proof of insurance shall be delivered to SunTrust and Grantor shall provide SunTrust with such evidence of payment of premiums due on account of such insurance as from time to time may be required by SunTrust. All such policies shall provide for at least thirty (30) days' prior written notice to SunTrust of any cancellation or modification thereof, including without limitation, cancellation for nonpayment of premium. Grantor shall give SunTrust prompt notice of any loss covered by such insurance and SunTrust shall have the right to join Grantor in adjusting any loss. Grantor authorizes SunTrust, at SunTrust's option, to collect, adjust and compromise any losses under any such insurance policies herein referred to. Any funds received as payment for any loss under any such insurance shall be paid over to SunTrust and shall be applied, after deducting the costs of collection, at the option of SunTrust, either to the prepayment of the Secured Indebtedness or to the reimbursement of Grantor for expenses actually incurred by Grantor in the restoration or replacement of Property, or any part thereof. In the event of foreclosure of this Deed of Trust or other transfer of title to the Property all right, title and interest of Grantor, in and to any insurance policies then in force, shall pass to the purchaser or grantee, which may be, but shall not be limited to, SunTrust.

5.   **SunTrust's Right to Remedy Defaults**. In the event Grantor shall neglect or refuse (a) to keep the Property in good repair and condition; (b) to pay promptly when due all taxes and assessments as described above; (c) to remove any statutory liens on the Property; (d) to keep the buildings, improvements and chattels insured as described above; (e) to deliver certificates or other proof of the policies or policy of insurance or the renewals to SunTrust as described above; (f) or it all amounts owed under the Note or indebtedness secured by any other deed of trust or other lien on the Property are not paid promptly when due, or all obligations, covenants, conditions and agreements under such deed of trust or other lien are not observed, the SunTrust may, if it elects, in addition to any other rights it may have under this Deed of Trust, with or without taking possession of the Property, make repairs as it deems necessary, pay such taxes and assessments with any accrued penalties and/or interest, pay any necessary expenses, redeem the Property which may have been sold or forfeited for taxes or assessments thereon, remove any statutory liens or encumbrances and prosecute or defend any suit in relation thereto, or insure and keep insured said buildings, improvements and chattels as provided herein, or make any payments as may be necessary to cure any default. Any sums including, without limitation, costs, expenses and attorneys' fees which may be expended by SunTrust or Trustee in so doing or

otherwise for the protection or preservation of the Property or the lien of this Deed of Trust thereon, shall bear interest from the dates of such payments at the highest rate of interest being paid on the Secured Indebtedness (but in no event higher than the rate or rates permitted under applicable law), shall be paid by Grantor to SunTrust upon demand, shall become a part of the Secured Indebtedness and shall be recoverable as such in all respects. Any such liens, claims, taxes, expenses, assessments or tax titles so purchased, paid or redeemed by SunTrust shall, as between the parties hereto and their successors in interest, be deemed valid, so that in no event shall the necessity or validity of any such payment be disputed.

6.     **Default, Acceleration of Payments: Trustee's Sales or Lease; Advertisement Required**. Any of the following shall constitute an event of default under this Deed of Trust: (a) the occurrence of any breach, default or event of default under any agreement, instrument or other document evidencing the Secured Indebtedness; or (b) a default under any superior or inferior lien upon the Property. Upon the occurrence of any event of default regardless of whether SunTrust shall have cured such event of default on behalf of Grantor in accordance with the terms of this Deed of Trust, SunTrust may elect, without notice, to cause all the Secured Indebtedness to be at once due and payable in full, and the Trustee, or its successor in trust, as soon as reasonably practicable after requested to do so by SunTrust (i) may take possession of the Property and may make any repairs or replacements to the Property deemed necessary by Trustee or SunTrust and/or sell (and in case of default of any purchaser, resell) in whole or in part the Property at public auction at such time and place and upon such terms and conditions as Trustee may deem appropriate or as otherwise required by applicable law after first having given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as then may be required by law and then having given such notice and advertised the time and place of such sale in such manner as then may be provided by law, and in case of any sale or resale, Trustee may require a bidder's deposit of not more than ten percent (10%) of the sales price, but not less than $1,000, and shall (the terms of sale having been complied with) execute a deed or deeds, assignment and transfer of title to the Property to the purchaser; at any such sale or resale, SunTrust may bid and become the purchaser of the Property; and (ii) may revoke any license granted to Grantor to collect and apply rents, issues and profits and may take possession of the Property and may lease the Property either pending sale or until the amount of the Secured Indebtedness is paid and may deduct from rents received all costs of collection, repair, replacement and administration and apply the net proceeds to the Secured Indebtedness. The Trustee is hereby empowered to bring in its name, or in the name of SunTrust, any suit or action it deems advisable for the enforcement of the provisions of this clause, but the Trustee and the SunTrust shall be in no way personally liable under any of the provisions of such lease or of this clause, and shall not be personally liable to any person by virtue of their possession of the Property or by virtue of their acting under any provisions of this clause, except to the extent of accounting for rents actually received by them.

The Trustee shall be entitled to a commission of 5% of the gross proceeds of sale for a completed foreclosure. In the event foreclosure is commenced, but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys' fee, and a partial commission computed on 5% of the outstanding indebtedness in accordance with the following schedule, to wit: one-fourth thereof before the Trustee issues a notice of hearing on the right to foreclosure; one-half thereof after the issuance of said note; and three fourths thereof after such hearing; and the full commission after the initial sale.

The proceeds of any sale of the Property by Trustee shall be applied by Trustee: First, to pay all proper costs and charges, including but not limited to court costs, advertising expenses, auctioneers' allowances, the expenses, if any, required to correct any irregularity in the title, auditors' fees, attorneys' fees, cost of repairs or replacements, and all other expenses of sale incurred in and about the protection and execution of this Deed of Trust, and a trustee's commission of five percent (5%) of the amount of gross proceeds of said sale or sales, and attorneys' fees and expenses of any litigation which may arise on account of the execution and enforcement of this Deed of Trust or the Note; Second, to pay all taxes and assessments due upon said land and premises at time of sale; Third, to pay and satisfy all the Secured Indebtedness, interest and all other charges hereby secured then remaining unpaid, and interest thereon to date of payment, whether the same shall be due or not, it being understood and agreed by Grantor that the amounts due under the Note shall, upon such sale being made before the maturity thereof, be and become immediately due and payable at the election of SunTrust; and Fourth, to pay the remainder of said proceeds, if any to any person lawfully entitled thereto. If after so applying such proceeds, any portion of the Secured Indebtedness shall remain unpaid, such balances shall continue to be due and payable, and shall be subject to collection by SunTrust by suit or otherwise. In the event the Property shall be advertised for sale as provided above but be withdrawn from sale or for any other reason not sold, Trustee shall be entitled to one-half of the commission above provided to be computed on the amount of the debt hereby secured or so much thereof as remains unpaid, including any

advances, re-advances and accruals, and any fees of attorneys or auctioneers, and any other expenses shall be charged to and paid by Grantor.

In addition, in the event of default, SunTrust shall have all rights and remedies permitted by law and by any document evidencing, governing, or securing the obligations secured by this Deed of Trust.

7.    **Substitute Trustee.** SunTrust has the irrevocable right and power to substitute without cause or notice a trustee or trustees in the place of any Trustee named under this Deed of Trust. Such power of appointment and substitution may be exercised at any time and as many times as SunTrust, its successors or assigns, may desire. Such substitute Trustee(s) shall be vested with the same titles and powers as are granted to the original Trustee. Nothing shall deprive SunTrust of its right to apply for and receive any relief regarding the Trustee which is now, or which may be, provided for by the internal laws of the jurisdiction in which the Property is located or applicable federal law.

8.    **Condemnation.** Grantor irrevocably grants, assigns, transfers and sets over unto SunTrust all right, title and interest of Grantor in and to any award or payment made (not to exceed the outstanding Secured Indebtedness including, without limitation, accrued interest, and costs, expenses, reasonable attorneys' fees, and disbursements incurred by SunTrust in connection with collection of such award and payment) in respect of (a) any taking of the Property or any part thereof as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of eminent domain or condemnation; and (b) any such taking of any appurtenances to the Property; and (c) any damage to the Property or any part thereof due to governmental action affecting, but not resulting in a taking of, the Property, including, by way of example and not by way of limitation, the changing of the grade of a street adjacent or proximate to the Property. Grantor agrees to promptly notify SunTrust of the commencement of any condemnation or eminent domain proceeding. Grantor further agrees, upon request, to make, execute and deliver any assignments or other instruments necessary for the purpose of assigning or transferring any such award or awards to SunTrust free and clear of any encumbrances. The excess amount of such award over and above sums due SunTrust on account of the Secured Indebtedness, interest and other charges, shall be paid to Grantor, its successors and assigns.

9.    **Restrictions on Transfer of Property; No Secondary Financing; Mechanics' Liens.**

*NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY.*

a.    If all or any part of the Property is sold, transferred, conveyed or encumbered without SunTrust's prior written consent, SunTrust may, at its option, require immediate payment in full of all sums secured by this Deed of Trust and exercise all remedies provided in this Deed of Trust in the event of default. However, this option shall not be exercised by SunTrust if exercise is prohibited by federal  law as of the date of this Deed of Trust. SunTrust reserves the absolute option and right, if permitted by applicable law, among other things, to require the agreement by Grantor and Grantor's transferee to any terms and conditions that SunTrust may require upon transfer, increase the rate of interest upon transfer, and charge an assumption fee.

b.    To the extent permitted by applicable law, Grantor shall not voluntarily or otherwise permit to be created or filed against the Property, without the prior written consent of SunTrust in each instance, any other deed of trust or mortgage or other lien or liens inferior or superior to the lien of this Deed of Trust.

c.    Grantor will keep and maintain the Property free from all liens arising by virtue of all persons supplying labor performed on or materials incorporated in or on the Property, notwithstanding by whom such labor or materials may have been contracted, and if any liens in respect to such labor or materials are filed against the Property, Grantor shall cause the lien to be released completely of record either by payment and discharge or by the posting of a collateral bond or other substitute collateral in accordance with applicable laws within twenty (20) days of the filling of the lien, and Grantor will make all payments on all liens permitted herein (if any), when due.

10.    **Assignment of Rents.** Grantor hereby assigns unto SunTrust or its successors all leases of the Property and the rents, issues and profits accrued and to accrue from all Leases and tenants of the Property or any part thereof, during the term of this Deed of Trust, or any extensions thereof. Until and unless revoked by the SunTrust, Grantor shall have a license to manage and operate the Property and to collect and apply to its own account all rents, issues and profits as they become due, but no more than one month in advance. SunTrust may revoke this license at any time, in its sole and absolute discretion. SunTrust shall give the Grantor notice of any demand for rents made against tenants of the Property contemporaneously with the giving of notice to tenants. Grantor will not execute any assignment of the rents, issues and profits from the Property or any part

thereof unless such assignment shall provide that it is subordinate to the assignment of rents set forth in this Deed of Trust and any other assignments executed pursuant to or in conjunction with this Deed of Trust.

11.     **Notice of Adverse Claim of Lien**. If Grantor receives any notice or other instrument which might materially adversely affect the Property or the lien of this Deed of Trust, Grantor will furnish, within three (3) days following such receipt, by certified mail, a copy of such notice or other instrument to SunTrust. The notices referred to herein shall include, but not be limited to, notices from any tenant or lessee claiming a default by Grantor under any lease or occupancy agreement, any notice by any public authority concerning any tax or special assessment; and any notice of any alleged violation of any building, zoning, fire or other law or regulation affecting the Property.

12.     **Remedies Cumulative; Forbearance by SunTrust/Trustee Not a Waiver**. All remedies available to SunTrust or the Trustee with respect to this Deed of Trust or under any instrument evidencing, governing or securing the Secured Indebtedness, including, but not limited to, any other deeds conveying other property in trust to secure payment of the obligations secured hereunder, or provided by law or in equity or by any statute, or otherwise, shall be cumulative and may be pursued concurrently or successively. Grantor, for itself and all who claim under it, waives to the extent that it lawfully may, all right to have the Property marshalled upon any sale or foreclosure hereunder. No delay or omission of Trustee or SunTrust to exercise any right, power or remedy shall impair any such right, power or remedy, or shall be construed to be a waiver of any default or any acquiescence therein. No delay or omission on the part of SunTrust to exercise any option granted for acceleration of the maturity of the Secured Indebtedness or for foreclosure following any default or any other option granted to SunTrust hereunder in any one or more instances, or tender to and/or acceptance by SunTrust of any partial payment on account of Grantor's or Debtor's obligations shall constitute a waiver of any such default or operate to rescind any such acceleration and each such option shall remain continuously in full force and effect.

13.     **Hold Harmless**. Grantor shall save SunTrust and Trustee harmless from all costs and expenses, including reasonable attorneys' fees and costs incurred by reason of any action, suit, proceeding, hearing, motion or application before any court or administrative body in and to which SunTrust and/or Trustee may be or become a party by reason of this Deed of Trust, including, but not limited to, condemnation, bankruptcy, probate and administration proceedings, as well as any of the foregoing wherein proof of claim is by law required to be filed or in which it becomes necessary to defend or uphold the terms or priority of this Deed of Trust, and all money paid or expended by SunTrust or Trustee in that regard, together with interest thereon from date of such payment at the highest rate of interest being charged on the Secured Indebtedness (but in no event higher than the rate or rates permitted under applicable law), shall be immediately and without notice due and payable by Grantor, shall become a part of the Secured Indebtedness and shall be recoverable as such in all respects.

14.     **Trustee's Authority**. Trustee or any person acting in its stead shall have, at its discretion, authority to employ all proper agents and attorneys in the execution of this Deed of Trust, and pay for such services rendered out of the proceeds of the sale of the Property, should any be realized; and if no sale be made, then Grantor hereby undertakes and agrees to pay to Trustee the cost of such services rendered. If from time to time more than one Trustee or substitute Trustee shall have been appointed, then any one Trustee or substitute Trustee may act for all such Trustees and/or Substitute Trustee(s).

15.     **Governing Law**. This Deed of Trust, without regard for the place of contract, advance of funds or payment, shall be governed, construed and enforced according to the laws of the state of North Carolina.

16.     **Severability of Provisions**. In the event any one or more of the provisions of this Deed of Trust or of the Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event any one or more of the provisions of this Deed of Trust or of the Note operate or would prospectively operate to invalidate this Deed of Trust, then and in any of those events, at the option of SunTrust, such provision or provisions shall be severable and shall not affect any other provision of this Deed of Trust or of the Note or the validity of Grantor's or Debtor's other obligations and the remaining provisions of this Deed of Trust or of the Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

17.     **Waiver of Notice of Future Advances and Consent to Extensions, Modifications and Release**. If Grantor (or any one or more of the parties constituting Grantor) is not the Debtor, then Grantor expressly (a) waives notice of any and all loans and/or advances made from time to time during the continuance of this Deed of Trust by the SunTrust to Debtor (or any one or more of the parties constituting Debtor); (b) agrees that modifications of the terms of the Note, including without limitation, modifications extending the term for payment or adjusting the interest rate applicable to the Secured Indebtedness, may be made from time to time between SunTrust and Debtor without notice or consent of Grantor; (c) agrees that SunTrust, without notice to

or further consent of Grantor, may grant extensions of time and other indulgences to and renew any of the obligations of Debtor without regard to the number and length of such extensions, renewals or other indulgences. Grantor further agrees that SunTrust without notice to or further consent of Grantor, may release or discharge any persons who are or may be liable for the payment of the Note or release or discharge any collateral for payment of the Secured Indebtedness and that any such release or discharge shall not alter, modify, release or limit the liability of Grantor (or any one or more of the parties constituting Grantor) or the validity or the enforceability of this Deed of Trust; and (d) agrees that SunTrust may exercise its rights under this Deed of Trust prior to taking any action against the Debtor.

18.    **Release of Deed of Trust**. Upon payment of the Secured Indebtedness and the performance of all the covenants and conditions, Trustee and/or SunTrust shall release and discharge, at the expense of the Grantor if permitted by law, this Deed of Trust and the liens, security interests and assignments created by this Deed of Trust.

19.    **Time is of the Essence**. Time shall be of the essence for each and every provision of the Note, this Deed of Trust and all other documents, agreements and contracts evidencing, securing or governing the obligations secured hereby.

20.    **References; Applicability**. All references in the foregoing covenants to SunTrust shall apply equally to any subsequent holder or assignee of the Note.

21.    **Titles**. The titles contained in this Deed of Trust are for reference purposes only and shall not affect the meaning or interpretation of this Deed of Trust.

22.    **Designations**. In any designation hereunder, the use of one gender shall include any other gender wherever the same may be appropriate, and the plural shall be substituted for the singular or the singular substituted for the plural in any place in which the context may require such substitution.

23.    **Transfer of Loan.** SunTrust may, at any time, sell, transfer or assign the Deed of Trust, Note and any related loan documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities").  SunTrust may forward to each purchaser, transferee, assignee, servicer, participant, or investor in such Securities or any Rating Agency (as hereinafter defined) rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which SunTrust now has or may hereafter acquire relating to the Grantor or Debtor, any loan to Grantor or Debtor, any guarantor or the Property, whether furnished by Grantor or Debtor, any guarantor or otherwise, as SunTrust determines necessary or desirable.  The term "Rating Agency" shall mean each statistical rating agency that has assigned a rating to the Securities.

[This space intentionally left blank]

Grantor has caused this Deed of Trust to be signed and delivered as of the date first written above.

Sash Enterprises, INC

By: _____

Rayshion Sashington, CEO

**ACKNOWLEDGMENTS:**

_Iredell_____ County, North Carolina

I certify that the following persons(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _RAYSHION SASHINGTON, CEO_

_____.

Date: _Oct 1 2019_    _Richard Lutzel_, Notary Public

(Official Seal)    My commission expires: _6/22/21_

RICHARD J LUTZEL
Notary Public
Mecklenburg
County
NORTH CAROLINA

[This space intentionally left blank]

**Exhibit A**

Exhibit A to attached Deed of Trust, dated September 27, 2019 by Sash Enterprises, INC ("Grantor").


Tract 1:
Being Lot No. 3 on Block "14" as shown on map of Royal Oaks, a map of said property being on file in the office of the Register of Deeds in Map Book 5 at Page 52.

Tract 2:
BEING all of Lot 4 in Block 14 of ROYAL OAKS SUBDIVISION as shown on Map recorded in the Cabarrus County, North Carolina Public Registry in Map Book 5 at Page 52.

# EXHIBIT C

 **SunTrust**

**Unconditional Guaranty**

This guaranty of Rayshion Sashington ("Guarantor") dated September 27, 2019, provides:

**Whereas,** Sash Enterprises, INC (herein, whether one or more, the "Borrower") desires to transact business with and to obtain credit or a continuation of credit from SunTrust Bank, its present and future affiliates and their successors and assigns (collectively, "SunTrust"); and

**Whereas,** SunTrust is unwilling to extend or continue credit to Borrower unless it receives a guaranty from the undersigned Guarantor with respect to the Obligations, as defined below, of Borrower to SunTrust;

**Now, Therefore,** in consideration of the premises and of other good and valuable consideration and in order to induce SunTrust from time to time, in its sole discretion, to extend or continue credit to or enter into other transactions with Borrower, Guarantor absolutely and unconditionally guarantees to SunTrust performance and payment when due, whether by acceleration or otherwise, of any and all Obligations of Borrower to SunTrust, together with all interest and charges related thereto, and all reasonable attorneys' fees (in the amount of 15% of the principal and interest guaranteed hereby if this guaranty is governed by the laws of Georgia), and all costs and expenses of collection incurred by SunTrust in enforcing the Obligations or this guaranty, subject to the provisions contained herein.

1.    The term "Obligations" or "Obligation" as used herein shall include, without limitation, any and all liabilities, obligations, agreements and undertakings of Borrower to SunTrust in any amount, whether now existing or hereafter arising (including those owed by Borrower to others and acquired by SunTrust through purchase, assignment or otherwise), however created, evidenced or arising, whether individually or jointly with others, and whether absolute or contingent, direct or indirect, as maker, endorser, guarantor, surety or otherwise, liquidated or unliquidated, matured or unmatured, whether or not secured by collateral, and including, without limitation, (a) all obligations to perform or forbear from performing any acts, (b) all overdrafts on deposits or accounts maintained by Borrower with SunTrust, (c) all liabilities, obligations, agreements and undertakings of Borrower to SunTrust pursuant to any interest rate hedge agreement or other derivative transaction agreement or any foreign exchange contract or any application or other agreement requesting SunTrust to issue any letter of credit including, without limitation, the obligation of Borrower to reimburse SunTrust for all amounts funded by SunTrust pursuant to any such letter of credit (d) all obligations and other liabilities of Borrower to SunTrust in respect of any of the following services (i) any treasury or other cash management services, including, without limitation, automated clearing house (ACH) origination and other funds transfer, depository (including, without limitation, cash vault and check deposit), zero balance account and sweep, returned items processing, controlled disbursement, positive pay, lockbox, account reconciliation and information reporting, payables outsourcing, payroll processing, and trade finance services, and (ii) card services, including, without limitation, credit card (including, without limitation, purchasing card and commercial card), prepaid card (including, without limitation, payroll, stored value and gift cards), merchant services processing, and debit card services and (e) all costs of collection and protection of SunTrust's rights, including attorneys' fees allowed by law (in the amount of 15% of the principal and interest secured hereby if guaranty is governed by the laws of Georgia), whether such collection or protection occurs prior to, during, or after any bankruptcy proceedings filed by or against Borrower; provided, however, that "Obligations" will not include any Excluded Swap Obligation (as hereinafter defined). "Excluded Swap Obligation" means any Swap Obligation (as hereinafter defined), if and to the extent that all or any portion of this guaranty of such Swap Obligation is or becomes illegal under the Commodity Exchange Act (7 U.S.C. §1 *et seq.*) (as amended and, together with any successor statute, the "Commodity Exchange Act"), or any rule, regulation or order of the Commodities Futures Trading Commission (or the application or official interpretation of any thereof), by virtue of Guarantor's failure for any reason to constitute an "eligible contract participant" as defined in the Commodity Exchange Act and the regulations thereunder at the time that this guaranty becomes effective with respect to such Swap Obligation. If a Swap Obligation arises under a master agreement governing more than one swap, the exclusion of such Swap Obligation under this guaranty shall apply only to the portion of such Swap Obligation that is attributable to swaps for which this guaranty is or becomes illegal. For purposes hereof, the term "Swap Obligation" means any obligation to pay or perform under any agreement, contract or transaction that constitutes a "swap" within the meaning of section 1a(47) of the Commodity Exchange Act.

The amount of the Guarantor's liability under this guaranty shall be unlimited.

2.    This guaranty is a continuing guaranty, shall remain in force irrespective of any interruptions in the business relations of Borrower with SunTrust and shall apply to and guarantee any balance which shall remain due by Borrower to SunTrust; provided, however, that Guarantor may, by written notice delivered personally to an officer of SunTrust or received by registered mail by an officer of SunTrust, terminate this guaranty with respect to all Obligations of the Borrower incurred or contracted by the Borrower or acquired by SunTrust after the date on which the notice is actually received by such officer. Such termination shall not be applicable to any Obligation incurred prior to the receipt of such notice by SunTrust.

3.    SunTrust may at any time and from time to time, in the exercise of its sole discretion, either before or after default by Borrower or revocation or termination of this guaranty, without the consent of or notice to Guarantor, and without incurring



responsibility to Guarantor, or releasing or impairing the liability of Guarantor, or any security available to SunTrust, upon or without any terms or conditions:

a. Change the manner, place, or terms of payment (including payment amounts and rate of interest) and/or change or extend the time of payment, renew or alter any Obligation, any collateral or security therefore, or any Obligation incurred directly or indirectly in respect thereof, and this guaranty shall apply to the Obligations as so changed, extended, renewed or altered;

b. Sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any collateral or security at any time held by or available to SunTrust for any Obligation, or for any obligations of Guarantor or any person secondarily or otherwise liable for any of the Obligations; SunTrust shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral;

c. Exercise or refrain from exercising any rights against Borrower, Guarantor or others, or otherwise act or refrain from acting;

d. Release, compromise, or agree not to sue, in whole or in part, Borrower, Guarantor or any other party obligated on any of the Obligations;

e. Apply any sums received by it from any source to any Obligation or Obligations, in such order of application as Sun Trust may elect, regardless of what Obligation or Obligations remain unpaid. All payments shall be conclusively presumed to have been made by Borrower and no payment shall operate to reduce the obligation of a Guarantor unless, at the time such payments are made, written notice is delivered to an officer of SunTrust that such payments are made by a Guarantor in reduction of Guarantor's liability hereunder, and such payments are actually made by Guarantor; and

f. Fail to set off and release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or any other person liable for any of the Obligations, and may extend further credit in any manner to Borrower, and generally deal with Borrower or any security or other person liable for any of the Obligations as SunTrust, in its sole discretion, may see fit.

4.    As security for the payment of the Obligations and the obligation of Guarantor hereunder, Guarantor hereby assigns and grants a security interest to SunTrust in (a) all property of Guarantor in or coming into the possession, control or custody of SunTrust, or in which SunTrust has or hereafter acquires a lien, security interest, or other right; and (b) any existing or hereafter created lien or security interest in favor of Guarantor in any property of Borrower.

5.    Guarantor waives notice of acceptance of the guaranty and notice, including notice of default, on any Obligation to which it may apply, and waives notice of presentment and demand for payment of any of the Obligations, suit or other action taken by SunTrust against, and any other notice to, Guarantor or to any other party liable for the Obligations. Guarantor waives all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of SunTrust against Borrower. Except for any limitation which is specified above with respect to the amount of the maximum liability of Guarantor, this is an unconditional guaranty, and the liability of Guarantor to SunTrust shall not be terminated or in any way limited by reason or as the result of anything set forth or contained in any writing evidencing all or any part of the Obligations, nor shall it be limited to a proportionate part of the total of the Obligations. This is a guaranty of payment and not of collection and Guarantor waives any right to require that any action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of SunTrust in favor of Borrower or any other person and agrees that SunTrust is not responsible for the validity, perfection, recordation or enforceability of any collateral or security for the Obligations.

6.    Guarantor hereby ratifies, confirms, and adopts all the terms, conditions, agreements and stipulations of all notes and other evidences of the Obligations heretofore or hereafter executed. Without in any way limiting the generality of the foregoing, Guarantor waives and renounces any and all homestead exemption right Guarantor may have under or by virtue of the Constitution or laws of any state, or the United States, as against the obligation hereby created, provided however, that such waiver shall not apply to any obligation created hereunder which arises from any of the Obligations that are consumer credit transactions; and Guarantor does hereby transfer, convey and assign, and direct any Trustee in Bankruptcy or receiver to deliver to SunTrust, a sufficient amount of property or money in any homestead exemption that may be allowed to Guarantor to pay any Obligation in full and all costs of collection. Guarantor waives and renounces any defense to any of the Obligations which may be available to or could be asserted by Borrower, except for payment.

Guarantor also specifically waives any rights under Sections 26-7 through 26-9 of the North Carolina General Statutes.

7.    Guarantor subordinates all indebtedness of Borrower owing to Guarantor, whether now existing or hereafter arising, to the Obligations. Guarantor further agrees that it shall not be subrogated to, and will not enforce on its behalf, any right of action which SunTrust may have against Borrower until every Obligation shall have been paid in full. SunTrust shall have the right, immediately and without further action by it, to set off against any obligation of Guarantor to SunTrust, all money owed by SunTrust in any capacity to Guarantor, whether or not due.

8.    A subsequent guaranty by Guarantor shall not be deemed to be in lieu of or to supersede or terminate this guaranty but shall be construed as an additional or supplementary guaranty unless otherwise expressly provided therein; and in the event Guarantor, or any other guarantor, has given to SunTrust a previous guaranty or guaranties, this guaranty shall be construed to be an additional or supplemental guaranty, and not to be in lieu thereof or to terminate such previous guaranty or guaranties unless expressly so provided herein. Notwithstanding the foregoing to the contrary, in the event any previous or

subsequent guaranty by Guarantor does not exclude an Excluded Swap Obligation, the terms of this guaranty as it relates to any Excluded Swap Obligation will control.

9. This guaranty shall be binding on the Guarantor, notwithstanding the failure of any further contemplated guarantor(s) to execute similar instruments and notwithstanding the fact that the signature of one or more other parties guaranteeing the Obligations or any other existing or future signature shall be forged or unauthorized. The revocation of this guaranty in the manner permitted hereunder by Guarantor or any other party guaranteeing the Obligation, or the release by SunTrust of any one or more parties guaranteeing the Obligations, or the death of Borrower or Guarantor or any other party guaranteeing the Obligations, shall not affect or limit the liability of Guarantor, and SunTrust shall be under no duty to notify Guarantor of any such revocation, release or death.

10. Guarantor warrants to SunTrust that Guarantor has adequate means to obtain from Borrower on a continuing basis information concerning the financial condition of Borrower and that Guarantor is not relying on SunTrust to provide such information either now or in the future. Guarantor waives all errors and omissions in connection with SunTrust's administration of the Obligations except behavior which amounts to gross negligence or willful misconduct. Guarantor represents and warrants that as of the date of this Guaranty it is an "eligible contract participant" as defined in the Commodity Exchange Act.

11. No invalidity, irregularity or unenforceability of all or any part of the Obligations or of any collateral or security therefor shall affect, impair, or be a defense to this guaranty, and this guaranty is a primary obligation of Guarantor.

12. The term "Guarantor" as used herein shall mean the undersigned Guarantor and if the undersigned is a partnership or limited liability company, the obligations and liability of Guarantor shall remain in full force and applicable notwithstanding any changes in the identity of the parties comprising the partnership, limited liability company or other legal entity, and the term "Guarantor" shall include any altered or successor partnership or limited liability company, and the predecessor partnership or limited liability company, and their partners or member/managers shall not thereby be released from any obligation or liability.

13. No delay on the part of SunTrust in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on Guarantor shall be deemed to be a waiver of the obligation of Guarantor or of the right of SunTrust to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this guaranty be effective unless in writing signed by SunTrust nor shall any such waiver be applicable except in the specific instance for which given.

14. Guarantor agrees to provide to SunTrust updated financial information, including, but not limited to, tax returns and current financial statements in form satisfactory to SunTrust, as well as additional information, reports or schedules (financial or otherwise), all as SunTrust may from time to time request.

15. Notwithstanding the fact that the Obligations of Borrower may have been paid in full and this guaranty may have been returned to Guarantor, the obligations of Guarantor hereunder shall continue in full force and effect with respect to any amounts that SunTrust may ever be required to repay under any Bankruptcy or insolvency laws.

16. This guaranty shall not be construed to impose any obligation on SunTrust to extend or continue any credit at any time.

17. Each reference herein to Borrower shall be deemed to include Borrower and its successors and assigns. Each reference herein to SunTrust shall be deemed to include its successors and assigns, in whose favor the provisions of this guaranty shall also inure. Each reference herein to Guarantor shall be deemed to include heirs, executors, administrators, legal representatives, successors and assigns, all of whom shall be bound by the provisions of this guaranty.

18. Guarantor agrees that certain material events and occurrences relating to this guaranty bear a reasonable relationship to the laws of North Carolina. This guaranty shall be governed by the laws of North Carolina and, unless applicable law provides otherwise, in the event of any legal proceeding arising out of or related to this guaranty, the Guarantor consents to the jurisdiction and venue of any court located in North Carolina. To the extent that any provision in this guaranty is inconsistent with applicable law, SunTrust will comply with applicable law.

The undersigned Guarantor has read, understands and agrees to the provisions of this guaranty and has executed the same voluntarily under seal, with full authority and with the intent to be legally bound by its terms, conditions and obligations.

_____ (Seal)
Rayshion Sashington

# EXHIBIT D

womblebonddickinson.com



December 4, 2024

**VIA CERTIFIED MAIL RETURN RECEIPT
REQUESTED AND U.S. MAIL**

Sash Enterprises, Inc.
c/o Rayshion Sashington, CEO
2307 S. Cannon Blvd.
Kannapolis, NC 28083

RE: **Acceleration and Demand for Payment of Indebtedness**
    Obligor: Sash Enterprises, Inc.
    Account No.:  ****2443
    Note No.: 18
    Lender:  Truist Bank

Womble Bond Dickinson (US) LLP

555 Fayetteville Street
Suite 1100
Raleigh, NC 27601

t:  919.755.2100
f:  919.755.2150

Eudora "Dorie" F. S. Arthur
Attorney
Direct Dial: 919-755-2178
Direct Fax: 919-755-6048
E-mail: dorie.arthur@wbd-us.com

Greetings:

    Our law firm represents Truist Bank, successor by merger to SunTrust Bank, a North Carolina banking corporation ("Truist") in connection with the above-referenced loan to Sash Enterprises, Inc. (the "Borrower"). Events of default exist under the terms and conditions of the Loan, including, but not limited to, failure to pay the Loan to Truist in a proper and timely manner (the "Events of Default").  As a result of the Events of Default, the Loan has been accelerated and is now immediately due and payable in full.  Accordingly, demand is hereby made upon you for the immediate payment of the unpaid principal and accrued interest on the loan, together with interest and fees owing thereon, which amounts are as follows:

| | |
|---|---|
| Principal Balance: | $ 166,873.62 |
| Accrued Interest: | $ 2,135.75 |
| **Total Loan Balance:** | **$ 169,009.37** |

    Pursuant to North Carolina General Statute § 6-21.2 and other relevant law, you are hereby notified that the provisions relative to payment of reasonable attorneys' fees in the amount of fifteen percent (15%) of the outstanding balance due of the above-referenced obligations, in addition to the unpaid balance due thereon, will be enforced if such outstanding balance is not paid in full within ten (10) days of the mailing of this letter.  However, if the outstanding balance is paid in full before the expiration of such time, you will not be obligated to pay attorneys' fees as described.

    The institution of legal proceedings can be costly and these costs may be taxed to any judgment entered against you based upon the above-referenced obligations.  In order to avoid these additional costs, please immediately tender full payment of the debt.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/legal notices for further details.

WBD (US) 4889-7890-1981v1

Sash Enterprises, Inc.
December 4, 2024
Page 2

Nothing contained in this letter or in previous or subsequent discussions or communications between you, Truist and any respective representatives or counsel shall waive or modify any provision of the Loan or loan documents, or waive, limit or postpone any rights or remedies, all of which are expressly reserved.  Any partial payment made against the balance of the Loan, if accepted, shall not constitute a waiver of the existing default or any rights and remedies of Truist.  Any agreement by Truist, including any agreement to forbear, modify the terms of the Loan or waive any rights or remedies, must be in writing and signed by Truist; no oral or implied agreement of any kind will be recognized or enforceable.

**IN THE EVENT THAT THIS COMMUNICATION IS DEEMED TO BE AN ATTEMPT TO COLLECT A DEBT, ALL INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE. IN THE EVENT THAT THE BORROWER HAS RECEIVED A BANKRUPTCY DISCHARGE OR IS CURRENTLY UNDER THE PROTECTION OF THE US BANKRUPTCY COURT, THIS DOCUMENT IS SENT FOR NOTICE PURPOSES ONLY, AS REQUIRED BY THE CREDIT INSTRUMENT AND BY THE NORTH CAROLINA GENERAL STATUTES, AND IS NOT INTENDED BY TRUIST BANK TO COLLECT ON THE INDEBTEDNESS OR ASSERT PERSONAL LIABILITY FOR THE OBLIGATION RECITED HEREIN.**

Best regards,

**WOMBLE BOND DICKINSON (US) LLP**

Eudora F. S. "Dorie" Arthur
Attorney

cc:  Kendra McLemore, Truist Bank (via email)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

```
-------------------------------------------------------- x
In re:                                       :
                                             :        Chapter 13
RAYSHION SASHINGTON,                         :
                                             :        Case No.: 19-31767
                          Debtor.            :
                                             :
-------------------------------------------------------- x
```

## <u>NOTICE OF OPPORTUNITY FOR HEARING</u>

TAKE NOTICE that Truist Bank ("Truist") filed its Motion For Relief from the Automatic Stay on January 9, 2025 (the "Motion"). A copy of these papers is included with this Notice. If a copy of these papers is not included with this Notice, a copy may be viewed at the Court or the Court's website, *www.ncwb.uscourts.gov*, under the Debtor's name and case number or you may request in writing a copy from the undersigned party.

**<u>YOUR RIGHTS MAY BE AFFECTED.</u> YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**IF YOU DO NOT WANT THE COURT TO GRANT THE RELIEF REQUESTED IN THIS MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THIS MOTION, THEN ON OR BEFORE MONDAY, JANUARY 27, 2025, YOU OR YOUR ATTORNEY MUST DO THREE (3) THINGS:**

(1)     File with the Bankruptcy Court a written response in accordance with Local Rule 9014-1 <u>requesting that the Court hold a hearing and explaining your position</u>. File the response at:

> Clerk, United States Bankruptcy Court
> Western District of North Carolina
> Charlotte Division
> 401 W. Trade Street, Room 111
> Charlotte, NC 28202

If you mail your written objection to the Court for filing, you must mail it early enough so that the Court will receive it on or before the date and time stated above.

- 6 -

WBD (US) 4931-6166-6567

(2)     You must also mail or fax a copy of such objection to the parties shown below and any other parties as required by law or orders of the Court on or before the date stated above:

> James S. Livermon, III
> Womble Bond Dickinson (US), LLP
> 555 Fayetteville St., Suite 1100
> Raleigh, NC 27601
>
> Jenny P. Holman, Esq.
> Chapter 13 Trustee
> 3800 Arco Corporate Drive
> Suite 510
> Charlotte, N.C.  28273

(3)     Attend the hearing scheduled for February 11, 2025, at 9:30 a.m. at the United States Bankruptcy Court, 401 West Trade Street, Charlotte, North Carolina, 28202 or as soon thereafter as the Court can hear the Motion.

If you or your attorney do not take these steps, A HEARING WILL NOT BE HELD, and the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

This the 9th day of January 2025          WOMBLE BOND DICKISON (US) LLP

                                   By:     /s/ James S. Livermon, III
                                           James S. Livermon, III
                                           NC State Bar Number 26492
                                           555 Fayetteville St., Suite 1100
                                           Raleigh, NC 27601
                                           Telephone: (919) 755-2148
                                           Charlie.livermon@wbd-us.com

                                           *Attorneys for Truist Bank*

- 7 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing MOTION FOR RELIEF FROM THE AUTOMATIC STAY and NOTICE was filed electronically in accordance with the local rules and was served electronically on those entities that have properly registered for such electronic service.  Entities not registered for electronic service have been served by depositing a copy thereof in the United States mail, postage pre-paid.

Rayshion Sashington
9802 Shearwater Ave NW
Concord, NC 28027

David William Hands, Esq.
Counsel for the Debtor
*Served via CM/ECF*

Jenny P. Holman, Esq.
Trustee
*Served via CM/ECF*

Dated:  January 9, 2025     WOMBLE BOND DICKINSON (US) LLP

By:   /s/ James S. Livermon, III
JAMES S. LIVERMON, III
NC State Bar No. 26492
E-Mail: Charlie.Livermon@wbd-us.com
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: 919.755.2100

*Attorneys for Truist Bank*

WBD (US) 4931-6166-6567